UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HALIBURTON SUBSEA | * | CIVIL ACTION |
| Plaintiff | * | |
| VERSUS | * | NO.  H-03-1842 |
| | * | |
| OCEANOGRAFIA, S.A. DE C.V.; and | * | |
| UNITED STATES FIDELITY AND | * | |
| GUARANTY COMPANY | * | |
| Defendants | * | |

## DEFENDANTS' JOINT  MEMORANDUM OPPOSING PLAINTIFF'S MOTION TO AMEND PLEADINGS

Defendants, Oceanografia, S.A. de C.V. ("OSA") and United States Fidelity and Guaranty Company, jointly submit with respect that plaintiff's motion to amend the pleadings should be denied for several independent reasons.

First, as the Court has ruled, this matter is due to be resolved in arbitration. When a matter is referable to arbitration, the Court lacks power to fashion relief for the parties, including with respect to the amendment of pleadings; that is a matter for the arbitrators.  Under the Federal Arbitration Act, 9 USC §1 *et. sec.*, the role of courts is "limited to determining two issues: (i) whether a valid agreement or

1

obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2nd Cir. 2003). Once the arbitration panel has definitively ruled, the Court's role is merely to enter judgment consistent with the award, unless one of the extremely narrow grounds set forth in §10 of the FAA exists for vacating or modifying the award. See 9 USC §10; *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001). The Court owes "extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law." *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000).

In this case, plaintiff does not even attempt to demonstrate that it is entitled to relief under the very narrow grounds set forth in the FAA. Its motion to amend therefore should be denied.

Second, the arbitrators have already ruled on plaintiff's motion to amend. The motion was filed before the arbitrators as well, and, by Order of April 28, 2006, the panel denied the motion.[1] It would be wholly inappropriate for the Court to grant inconsistent relief. This is true both as a prudential matter and also as a matter of collateral estoppel. It is well-settled that arbitration rulings have a collateral estoppel effect in court proceedings between the parties. *Universal American Barge Corp. v.*

---

[1] See Panel's Order of April 28, 2006 (Exhibit "A").

*J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991).

Third, plaintiff's claims have already been fully and finally resolved in the arbitration.  In the Order of April 28, the Panel dismissed plaintiff's claims in their entirety with prejudice.  There is accordingly nothing left for the Court to do but enter judgment consistent with the final arbitration ruling and dismiss the case. (Defendants are today filing a joint motion to enter judgment consistent with the panel's final ruling and dismissing this case.)  The case, in short, is over.

Fourth, plaintiff cannot amend because it lacks standing to do so.  To amend or substitute parties under FRCP 15 or 17, plaintiff must have standing to be in Court in the first place.  A defect in plaintiff's standing means a defect in subject-matter jurisdiction, necessitating dismissal.  *Bender v. Williamsport Area School Dist.*, 475 US 534, 541, 106 S.Ct. 1326, 1331 (1986); *Lans v. Gateway 2000, Inc.*, 84 F.Supp.2d 112, 115, n6 (D.D.C. 1999).  Lack of standing cannot be cured by amendment. "[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint  and control the litigation by substituting new plaintiffs...and a new cause of action."  *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278,  1282 (5th Cir. 1981).

The only plaintiff here is Baroid International Trading Company ("BITC").  In the arbitration, plaintiff filed an amended complaint, substituting BITC as the sole

plaintiff in place of "Halliburton Subsea" (a nonexistent legal entity).[2]  Yet BITC is not named in either contract.  The 1999 MSA was entered into between OSA and Subsea International, Inc. ("SII"); the 2001 MSA was between OSA and "Subsea International, a Division of Kellog, Brown and Root, Inc.").[3]  Although SII was merged into BITC and ceased to exist in March 1999,[4] it is now undisputed that BITC did acquire rights under either contract in the merger.  Rather, as plaintiff's own designated representative testified in plaintiff's corporate deposition, BITC did not acquire any assets from SII, which was an "empty corporate shell" at the time of the merger, its assets (including contract rights) having gone elsewhere.[5]  Indeed, the corporate witness, an in-house lawyer for the Halliburton companies, acknowledged that the contract rights may have gone to an outside company, Subsea 7, LLC, which began as a joint-venture with a European conglomerate, DSND, but in which no Halliburton company has any remaining interest.[6]  It was this independent outside

_____

[2]  See Plaintiff's Amended Complaint (Exhibit "B").

[3]  See relevant pages of the two respective contracts (Exhibit "C" ).

[4]  BITC dep. (Molinet), at 15, 53, 55-56 (Exhibit "D").

[5]  BITC dep. (Molinet), at 19, 27, 29-30, 45 (Exhibit "D").

[6]  BITC dep. (Molinet), at 71-77, 80-81 (Exhibit "D") (Q: "Could it be the case that contractual rights of Subsea International, Inc. with Oceanografia were transferred...to Subsea 7?  A: "I don't know...."  Q: "[A]s far as you know, that may or may not be true?"  A: "That's correct.")

company, Subsea 7, that ultimately acquired Halliburton's Subsea (i.e. the relevant) business.

Because plaintiff was not a party to either contract (and hasn't been assigned or succeeded to either contract), plaintiff has no rights under the contracts and no standing to sue for their breach. In the absence of standing, plaintiff may not move to amend. See, e.g., *Lans v. Gateway 2000, Inc.* 84 F.Supp.2d 112 (D.D.C. 1999)(having assigned patent to another, plaintiff lacked standing to sue for infringement or to amend to name additional parties); *Live Entertainment, Inc. v. Digex, Inc.*, 300 F.Supp.2d 1273 (S.D. Fla. 2003)(entertainment company was not a party to the contract nor a lawful assignee of the contract that was being sued upon, and it therefore lacked standing to maintain the action or to amend its claim to substitute  a new plaintiff as real party-in-interest).

This precise legal issue was addressed in the case of *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002). In *Logitrans*, the plaintiff-insurer moved to substitute as real party-in-interest the name of another insurer (as plaintiff's counsel had mistakenly named the wrong insurer in the complaint). The Sixth Circuit denied the motion on grounds that the named plaintiff, as a stranger to the transaction in dispute, had suffered no "injury in fact," an essential component of standing, and thus had no right to sue, much less to move to substitute. The court wrote:

> Article III standing is a jurisdictional requirement that
> cannot be waived, and such may be brought up at any time
> in the proceeding. Whereas Zurich American admittedly

has not suffered injury in fact by the defendants, it had no
standing to bring this action and no standing to make a
motion to substitute the real party in interest. Accordingly,
the district court's denial of Appellants' Rule 17(a) motion
to substitute and the subsequent dismissal of the action
must be affirmed.[7]

The *Logitrans* court went on to explain that the substitution of real parties-in-
interest is subject to the bedrock prerequisite that jurisdiction existed over the original
claims.[8]   And for there to be jurisdiction, the plaintiff must have standing.   In
*Logitrans*, this requirement had not been met.   The court explained:

An attorney made a mistake and filed the action in the
name of Zurich Switzerland, when Zurich Switzerland had
no claims whatsoever against the defendants, and no
Article III standing to sue.   American Guaranty, a totally
separate entity, which was not vigilant in protecting its
claims, cannot now benefit from Zurich Switzerland's
mistake so as to take advantage of the suspension of the
limitations.[9]

Since the company sought to be substituted as plaintiff was a "totally separate
entity," the situation was analogous to one in which a claim is filed in the name of
"John Doe" (a fictitious person), in the hope that an amended pleading substituting
a real party-in-interest may be filed later.[10]

In this arbitration as well, the companies that BITC seeks to name as additional

---

[7] *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

[8] *Id.* at 531.

[9] *Id.* at 532.

[10] *Id.*

6

plaintiffs are "totally separate entities."  The mere fact that the separate and distinct

corporation may be affiliated in some fashion changes this fact not a whit.  In fact,

this very argument was addressed in *Logitrans*.  As noted in the concurring opinion:

> The lead opinion concludes that Zurich Insurance suffered no
> injury in fact because it is "a totally separate entity" from
> American Guaranty.  Although this statement is technically
> correct, a reader unfamiliar with the record might easily infer this
> to mean that the two entities are unrelated.  Such is clearly not the
> case.  Instead, Zurich Insurance and American Guaranty are *sister
> companies* under the common ownership of a single corporate
> entity – Zurich American Insurance Corporation.[11]

The concurring opinion went on to explain that sister-company status was not

enough to confer standing:

> As sister companies that are only connected with one
> another by the common owner they share, a financial injury
> to American Guaranty would have little to no effect on
> Zurich Insurance.  As a result, Zurich Insurance has not
> been shown to have suffered any injury from American
> Guaranty's losses....I therefore agree with the court's
> conclusion that Zurich Insurance lacked Article III
> standing to move for a substitution of the real party in
> interest under Rule 17(a). Without Article III standing, the
> district court lacked subject matter jurisdiction over the
> entire case.   Where jurisdiction does exist, "the only
> function remaining to the court is that of announcing the
> fact and dismissing the cause." *Steel Co. v. Citizens for a
> Better Env't*, 523 US 83, 94, 118 S.Ct. 1003 (1998).

Our case is the same.  BITC's own corporate representatives have established

that BITC was not a party to, and has not acquired rights under, the MSA contracts

---

[11] *Id.* at 533.

in issue.  It follows that BITC has not suffered an injury-in-fact.  BITC therefore lacks

standing and cannot move to substitute new parties into the case.

Finally, if the Court somehow reaches the merits of plaintiff's motion, it still

should be denied.  Under the governing legal standard, plaintiff may not amend

unless it moves to do so within a "reasonable time" after an objection is raised to its

status as the proper plaintiff.  Fed. R. Civ. P. 17.

BITC invokes Rule 17 principles and asks the Panel for leave to substitute new

plaintiffs – and a variety of new substantive claims never before alleged (quantum

meruit, actions on account, promissory estoppel) – *after its claims have already been*

*dismissed!*  Insofar as we can tell, such extravagant relief is unprecedented.  BITC

cites no authority for the proposition that a Rule 17 motion may be  properly

considered after the claim has been dismissed.

Rule 17 merely states that a claim should not be dismissed based upon a real

party-in-interest problem "until a reasonable time has been allowed after objection"

to cure the defect.  However, "if the real party-in-interest is not joined or substituted

***within a reasonable time***, the court should dismiss the suit."  C. Wright & A. Miller,

6A *Federal Practice & Procedure* §1555 (Updated by 2005 Pocket Part); see also

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858 (D.C.

Del. 1982) (denying as untimely plaintiff's motion to amend brought two years after

it had notice may not be property party); *Automated Information Processing, Inc. v.*

*Genesys Solution Group, Inc.*, 164 F.R.D. 1,3 (D.C.N.Y. 1995) (denying leave to

8

amend where information as to the proper plaintiff was "within plaintiff's responsibility and ability to ascertain"); *Live Entertainment, Inc. v. Digex, Inc.*, 30 F.Supp. 2d 1273 (S.D. Fla 2003) (denying Rule 17 motion to substitute as untimely).

BITC here plainly does not meet the standard. OSA objected in its answer filed in January 2004. Further, it is undisputed that OSA again raised the real party-in-interest issue in the first conference call with the arbitrators immediately the Panel had been constituted in June 2005. Yet plaintiff waited until after the case was dismissed to file its motion in April 2006 – more than two years after the first notice and nearly a year after the issue was raised in the arbitration. Indeed, as late as the argument on OSA's motion (held on March 15, 2006), BITC was still defiantly arguing – against all evidence – that it was the proper party with rights under the relevant contracts. In the "Conclusion" of its memorandum opposing defendants' summary judgment motions, plaintiff wrote: "Baroid [i.e. BITC] and Halliburton Subsea are the proper parties Plaintiff to bring this action...."[12]   (Note that the reference to Halliburton Subsea was inappropriate since it had been substituted out as plaintiff in favor of BITC.). Plainly, a "reasonable time" had long expired before plaintiff filed the motion, which therefore does not meet the requirements of Rule 17.

Plaintiff relatedly argues that its mistake was understandable and therefore redressable under Rule 17 standards. Nothing could be further from the truth.  It is

---

[12] See Plaintiff's Response to [Defendants']...Motions for Summary Judgment, at p.19 (Exhibit "E").

hard to see how plaintiff's mistake could be any less understandable or justifiable. Plaintiff had literally years to determine the proper party to sue. At this absurdly late date, with the matter already having been dismissed, any mistake that has occurred is far from understandable. BITC was not justified in assuming that it had rights under these contracts considering that (1) its name does not appear on either contract; (2) that its own in-house lawyer (Molinet) knew it had no such rights; (3) that the merger of SII into BITC predated the contracts and so obviously could not have conveyed rights under them; (4) that BITC, as a mere holding company with no real operations, never enters into such contracts; (5) that OSA has disputed that BITC has such rights from the beginning; (6) that the records showing whether it had the rights have for years been in the exclusive possession of plaintiff and its affiliates; (7) that BITC stonewalled in discovery, failing too produce numerous relevant documents that were requested and would have shown that it did not have rights under the contracts in issue; and (8) that one of the parties that plaintiff now seeks leave to add (Kellogg, Brown and Root) is actually a named party in the second of the two contracts, namely the 2001 MSA, such that plaintiff need only have read the contract to know the basis for suing on its behalf.

In far less egregious circumstances, courts have held that motions to amend under Rules 15 and 17 were unjustifiably late and hence to be denied. In *Lans v. Gateway 2000, Inc.,* 84 F.Supp.2d 112 (D.D.C. 1999), the plaintiff forgot that he had assigned patent rights to another several years earlier. Noting that information

concerning the arrangement was exclusively in plaintiff's possession and that plaintiffs have a duty to conduct reasonable inquiry to confirm their ownership of the relevant rights before suing, the court found that the failure to name a real party-in-interest was not understandable and plaintiff's motion to amend the complaint under Rules 15 and 17 was accordingly denied.

Similarly, in *Live Entertainment, Inc. V. Digex, Inc.*, the court denied a motion to amend to add a real party-in-interest, rejecting plaintiff's plea that the mistake was understandable where it had been represented by counsel and should have known all along that an attempted assignment had been ineffective.

In *Automated Information Processing, Inc. V. Genesys Solutions Group, Inc.*, 164 FRD 1, 3 (E.D.N.Y. 1995), the court denied a motion under Rules 15 and 17 to amend to name new parties, and wrote:

> Nothing about the situation here suggests that justice requires the relief the 'new' plaintiffs seek. The information concerning AIP, Inc.'s nonexistence was certainly within plaintiff's responsibility and ability to ascertain . . . [I]t is of course a party's obligation to conduct reasonable inquiry concerning the limits of the allegations made in its pleadings.

Our case is similar: plaintiff had a duty to inquire to ascertain if it had the contract right before suing; it possessed all of the relevant records; yet it failed to make a reasonable inquiry and persisted in this failure for years after notice - even after a motion for dismissal had been filed.

So egregious was this failure that plaintiff failed to even name as plaintiff (and

now belatedly seeks to add) a company whose name appears on the face of the contract. Obviously, it was within plaintiff's ability to ascertain this years ago.

Thus, even if the Court were to reach the merits of plaintiff's motion, which the Court should not for the numerous reasons noted above, the motion still should be denied as untimely.

For these reasons, defendants respectfully submit that plaintiff's motion should be denied.

Respectfully submitted,

**HARRIS & RUFTY, L.L.C.**

/s/ Alfred J. Rufty, III
**RUFUS C. HARRIS, III (#29458)**
**ALFRED J. RUFTY, III (#29457)**
**650 Poydras Street. Suite 2710**
**New Orleans,** LA  **70130**
**Telephone: (504) 525-7500**
**Attorneys for Oceanografia S.A.**

**COATS, ROSE, YALE, RYMAN & LEE**

Paul Catalano, TBN: 03998400
3 Greenway, Suite 2000
Houston, Texas 77046
(713) 651-0111
(713) 651-0220 Facsimile
**ATTORNEY FOR UNITED STATES FIDELITY &**
**GUARANTY INSURANCE**

Of Counsel:

**COATS, ROSE, YALE, RYMAN & LEE, P.C.**
Heather E. Asselin
State Bar No.  00797143
3 Greenway, Suite 2000
Houston, Texas 77046
(713) 651-0111
(713) 651-0220 Facsimile


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by e-mail, this 1ST day of May, 2006.


_____ /s/ Alfred J. Rufty III_____

ALFRED J. RUFTY III